**Michael TISI, Plaintiff,**

v.

**Richard PATRICK, Filter, Warner Brothers Records Inc., d/b/a Reprise Records, WEA International Inc., EMI April Music Inc., EMI Music Inc. d/b/a EMI Records and EMI Records Group, Defendants.**

**No. 00 CIV. 0882(RWS).**

United States District Court, S.D. New York.

May 22, 2000.

Dowd & Marotta, New York City, Daniel C. Marotta, Raymond J. Dowd, of counsel, for Plaintiff.

Parcher, Hayes & Snyder, New York City, Orin Snyder, Cynthia S. Arato, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Plaintiff Michael Tisi ("Tisi"), a songwriter and the composer of a copyrighted but unpublished musical composition entitled "Sell Your Soul" ("SYS"), sought a preliminary injunction under Rule 65, Fed.R.Civ. P., to enjoin the defendants Richard Patrick ("Patrick"), Filter, a performing group, Warner Brothers Records Inc., d/b/a Reprise Records ("Warner Brothers"), WEA International Inc. ("WEA"), EMI April Music Inc., EMI Music Inc. d/b/a EMI Records and EMI Records Group (collectively, "Defendants") from distributing "Take A Picture" ("TAP"), a musical composition written by Patrick, on the grounds that TAP is derived from SYS and thereby infringes on Tisi's copyright.

In addition, both Tisi and Defendants have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Upon the findings of fact and conclusions of law set forth below, Tisi's motions for a preliminary injunction and summary judgment are denied, and Defendants' motion for summary judgment dismissing the complaint is granted.

This action requires an analysis of the common and unique aspects of the two rock music compositions at issue, as well as resolution of the issue of Patrick's access to Tisi's composition. Thanks to the skill of counsel and the clarity of the Defendants' expert witness, the unfamiliarity of the court with the genre has been overcome. A combination of common sense and a hastily trained ear dictate the forthcoming result.

### Prior Proceedings

Tisi commenced this action on February 7, 2000, by filing a complaint alleging that Defendants' publication of TAP violates Tisi's copyright in SYS.

An order to show cause seeking a preliminary injunction was obtained on February 14, 2000, discovery proceeded, affidavits in support and in opposition to the motion were submitted, and a hearing on the application was held on March 16, 20, and 21, at which evidence in the form of testimony and exhibits was produced. At the close of the hearing, both sides moved for summary judgment on the record before the court.

### Findings of Fact

Tisi has composed and performed rock and roll songs off and on over the past ten years. Early in 1994, with a group, Blue Dahlia, he made a demonstration tape (the "Demo Tape") which included a recording of his composition SYS. Tisi classified this song as adult, contemporary rock music. SYS was copyrighted.

Tisi, his father Arthur Tisi, and his father's partner in Arthur Joseph Productions Company, Joseph Giovanni ("Giovanni"), sought to promote the Demo Tape and to obtain a recording contract for Tisi. Arthur Joseph Productions coordinates and promotes special events and in the course of such activities Giovanni and Arthur Tisi developed some knowledge of and contacts in the entertainment industry.

In 1994, Arthur Tisi sent the Demo Tape to Kenneth Lane, who at that time was a senior vice president of promotion at EMI Records. Lane listened to the tape and played it for executives in EMI's A & R (artists and repertory) department. The tape was rejected some weeks later. A letter of rejection was received from Lane on December 20, 1994. EMI Records at the time had no relationship with Patrick or Filter and was a competitor of Warner Brothers.

After the initial submission to EMI, Arthur Tisi made a submission to Warner Brothers through Greg Geller on December 13, 1994, which resulted in a rejection on March 13, 1995. The Demo Tape was

sent to Brian Koppelman at EMI Records again in August 1995.

In the same time frame, Giovanni, through his dentist, got the name of Jason Flom at a Warner Brothers Company, Atlantic Records. Giovanni testified that he sent the Demo Tape to Flom, who rejected the tape. There is no record relating to these actions.

Giovanni also testified that he requested John Ferry, an agent who had signed performers with Interscope, to have Interscope review the Demo Tape. Giovanni further testified that he had been told by someone that an unidentified member of "Nine Inch Nails" had heard the Demo Tape. Without corroboration, however, this vague double hearsay is not credible in view of Giovanni's interest and his failure to refer to these events in an earlier sworn statement on the subject.

In 1994 and 1995, Arthur Joseph Productions also submitted the Demo Tape to Mercury Records, Arista Records, Inc., Columbia Records, MCA Records, Interscope Records, Island Records, Geffen Records, Sony Music, Epic Records and Virgin Records, through particular individuals in most instances. These submissions did not result in any further inquiries with respect to the Demo Tape.

Ken Lane and Brian Koppelman of EMI were invited to a performance by Blue Dahlia on October 29, 1995 at which SYS was played. Lane attended, but there is no evidence that Koppelman did.

There has been no effort to promote or sell the Demo Tape since early 1996.

In early November 1999, Tisi heard TAP for the first time and bought a copy of the compact disc, "Title of Record," on which the song appears, although in an affidavit submitted in connection with the order to show cause, Tisi stated that he had not learned of the Patrick song until told about it by others in "late December 1999." The Tisis first consulted an attorney concerning the enforcement of Tisi's copyright on October 25, 1999.

Patrick, a Chicago resident, has performed and composed music since 1984 and has achieved wide recognition. In 1989, Patrick, then twenty-one years of age, toured as a guitar player with the band "Nine Inch Nails" and wrote music when not touring. In 1993, Patrick formed his own band, Filter, and in 1994 signed a recording agreement with Warner Brothers Records. "Short Bus," Filter's first album with songs written by Patrick, was released in April 1995 by Reprise Records, Inc., a division of Warner Brothers. A two-year tour followed. The "Short Bus" album achieved platinum sales status. Although most of the compositions on "Short Bus" are hard rock, two are more acoustic and softer, as was a 1997 Patrick composition for television.

In late 1996, Patrick, while playing his electric guitar, hit upon several chords which he liked, and he then composed a chorus, all of which he put aside during the construction of his sound studio in Chicago, the Abyssinian Sons Studio. In November 1997, Patrick recorded this guitar segment with a percussion group and added a melody which was heard by a Reprise executive. He composed the lyrics in 1998, which were related to an incident when Patrick was asleep on an airplane.

In 1999, Patrick completed work on Filter's next album, "Title of Record" and included as one of the songs this material which he had worked on in 1996 and 1997 and entitled it "Take A Picture." In the final version of the song, world-beat drums and a twelve-string guitar and additional guitar tracks were added. TAP was an independent creation by Patrick and those working with him, none of whom had heard SYS.

TAP was commercially released on August 24, 1999, and was promoted as a single to radio stations beginning on September 21, 1999. It started on the Billboard "Hot 100" chart at number 91 and by February 12, 2000 had risen to number 12. In early March it was number 20,

when it was simultaneously number 1 on the Billboard "Dance" chart. Filter has been on tour since the release of the album "Title of Record," and TAP has become a signature song for Filter and Patrick. Warner Brothers Records has invested over $4.5 million in the composition, licensing, and promotion of the album.

Patrick does not accept or listen to unsolicited tapes and has no relationship with EMI Records. EMI April Music Inc. and EMI Music Inc. administer copyrights, including Patrick's, but have no role in the creative process and have not sent tapes to Patrick or to anyone else. Until this litigation was initiated, Patrick had no knowledge of SYS or of Michael Tisi.

For the uninitiated, much of rock music sounds the same, and a hasty comparison of SYS and TAP could result in a finding of superficial similarity, as both songs employ a standard usage in rock music: an introduction, verse, chorus, and bridge, with harmonic and rhythmic similarities common to many musical genres, including pop rock. A closer review of the two compositions reveals, however, that they are significantly different. Even to one unversed in the genre, the two songs can be heard to be quite dissimilar.

The expert presented by the defendants, Dr. Lawrence Ferrara, is the Chair of the Department of Music and Performing Arts at New York University, and a recognized musicologist. Michael White, the expert proffered by Tisi, is a member of the graduate faculty at the Julliard School and a composer of operas, concertos and songs. As to the method of analysis, both were in agreement that the elements to be considered on the question of similarity between SYS and TAP were structure, melody, harmony, and rhythm. Both agree that the melodies of the two songs are dissimilar.[1] As to the other three elements, while there was disagreement as to the ultimate conclusions, both experts noted the same differences and similarities. Dr. Ferrara's conclusions were sounder and more credible, and his analysis more convincing once the examination moved beyond the initial audible overall dissimilarity of the two songs.

As to structure, to the extent that the two songs share any structural similarities, those similarities are not significant because they are uniformly shared with most modern popular rock music. Both songs employ a standard usage of introduction, verse, chorus and bridge sections. There are significant structural differences, however. TAP features a lengthy distorted rock guitar intro not found in SYS. In addition, the construction of the verse in both songs is significantly different as can be determined from the verses set forth in Appendix A. Moreover, there is a section that can be termed a "Closing" in TAP that is not found in SYS. Finally, the length of each song differs considerably.

The harmony is the element where the songs are closest, given the use of certain chords with common characteristics. However, there are notable differences in the harmonies. The harmonies throughout TAP are more complex and dissonant than in SYS, which make the songs sound different. Throughout the introduction and verse sections in TAP a B note (repeatedly played by the guitar) is present in almost every chord, which connects and defines the harmonic progression. No comparable or defining harmonic device is used in SYS.

Both songs are in the key of A major, as are countless songs in all genres of music. In addition, although both songs feature in their respective introductions and verses a basic "I–IV" harmonic progression, which is built on the first and fourth steps of the scale (in SYS and TAP, from the A chord to the D chord), this harmonic progression can be found in songs in all genres and therefore its use in both SYS and TAP does not constitute a significant similarity.

---

1. In addition, the lyrics of the two songs are completely different.

In addition, there are significant differences within the "I–IV" harmonic progressions found in TAP and SYS, although Tisi's expert urged that the four chords upon which both songs are based are the same: A (A7 and A9); D sus 4; D major. In fact, the four chord progression he describes (A(A7 and A9); Dsus4; D) occurs only in the introduction and verse in SYS and does not occur anywhere in TAP. The harmonic progressions found in TAP's respective introduction and verse are charted as follows:

| | | | | |
|---|---|---|---|---|
| 5–8: | A | A Asus4 A | Dsus4 D | Dsus4 D |
| 9–12: | Asus2 Aadd2 Asus2 Asus4(add2) A(add2) | | Dsus4(add6) D6 Dsus4(add6) D6 | |
| 13–16: | Asus2 Aadd2 Asus2 Asus4(add2) A(add2) | | Dsus4(add6) D6 Dsus4(add6) D6 | |

Although the "bottom notes" in the harmonies charted above are the same (A and D), the use in each song of the name or "root" of the chord as the "bottom note" for such chords is extremely common. By contrast, the contour of the upper voicing or "top notes" for the chords in their respective introductions is different:

| | | | | |
|---|---|---|---|---|
| SYS measures 1–8: | B C# | G F# G F# | B C# | F# |
| TAP measures 9–16 | B C# B D C# | G F# G F# | B C# B D C# | G F# G F# |

Because of the different chords used in TAP, as described above, TAP's harmony is more complex, nuanced, and dissonant than the harmony of SYS and produces a different musical sound. These harmonic differences demonstrate that the harmony of the two songs is not shared. The sole similarity—the I chord (A chord) to IV chord (D chord) progression—is so common to rock and pop genres (indeed, to every type of Western music) that it alone does not make the songs sound any more similar than countless other songs.

A lay listener may hear a basic similarity between the guitar rhythm of both songs because in both songs it is primarily based on four basic accents per measure. However, this rhythmic similarity is not significant because this guitar rhythm is extremely common in the pop rock genre, and is also featured in Eastern European folk music and is not original to either SYS or TAP. Moreover, in SYS, sixteenth notes are played evenly on a high hat cymbal and quarter notes are played on a bass drum. In addition, a tambourine and drum play on the second and fourth beats. This basic percussion rhythm is extremely common in the pop rock genre.

The percussion parts in TAP are much more complex. TAP employs "world music" rhythms and sounds with the use of uneven sixteenth notes and other patterns played by a percussion instrument known as a shaker, as well as contrasting rhythms played by a conga. In addition, as the song progresses, TAP layers multiple percussion tracks, which create complex and highly syncopated rhythms. These rhythms are associated with "tribal music" (a term used by ethnomusicologists). No similar rhythmic complexity can be found in SYS.

Furthermore, despite the superficial similarity of the guitar rhythms of the songs, significant differences exist. Multiple guitar tracks are layered in TAP which create a more complex guitar rhythm than in SYS. Further, the guitar rhythm in the first eight measures of SYS differs in several significant ways from the guitar rhythm in the correlative measures of TAP. The most prominent rhythmic difference is each song's approach to the fourth beat in each measure. In SYS, three sixteenth notes approach the fourth beat. By contrast, in TAP one sixteenth note followed by one eighth note approaches the fourth beat.

As mentioned, the melody in TAP does not share any notable similarities with the melody in SYS.

What similarities do exist between TAP and SYS can also be found in prior art contained in works by other groups and composers such as The Pretenders, U2, Eurythmics, Peter Gabriel, Neil Diamond, and Bon Jovi, as demonstrated by Dr. Ferrara. Although Tisi objected to the transposition of certain of the prior art songs to the key of A major to facilitate comparisons, transcription is an accepted practice for musicological analysis. The harmonic progressions and basic rhythms of this prior art are common to many rock compositions.

However, TAP contains what Dr. Ferrara termed "fingerprints," unique treatments used by Filter and Patrick. TAP uses rhythmic patterns, musical instruments (such as the shaker and conga) and melodic formulae which provide a flavor of "tribal music" as do several songs on the "Title of Record" album: "Sand" (track 1), "It's Gonna Kill Me" (track 4, especially at 1'23" and 2'04"), "The Best Things" (track 5) and "Miss Blue" (track 11), each fusing "world music" with pop rock music. Another distinguishing characteristic in TAP and other Filter songs is the enormous increase in its dynamics and rhythmic complexity as the song develops and flows to its ending. Furthermore, close to the end of TAP (with the lyrics, "Hey, dad, what do you think about your son now?"), the vocal range is very high, singing/screaming high B's, a range found in other Filter songs.

In addition, like TAP, "So Cool," another Filter song, has a closing section constituted of electronic synthesis, which is absent in SYS. In view of the similarities that TAP shares with the other songs recorded by Filter, TAP is consistent with Filter's other musical works.

The most memorable characteristics in TAP (which include complex rhythms, multi-layered guitar and percussion tracks, harmonic dissonance, vocal melody, a dynamic build-up to the end, and a "world music" flavor) are absent in SYS. To the extent that there are any similarities between the two songs, those similarities are insignificant and incidental and can be attributed to common musical practices in rock and pop music. The analysis of the two songs reinforces the finding. TAP was created without any reference to SYS.

As between Tisi and Patrick, the facts already set forth demonstrate that the balance of hardship, were injunctive relief granted, tilts strongly against Tisi's unknown and unpublished composition and in favor of Patrick's highly successfully and expensively promoted composition. This tilt is accentuated by Tisi's failure to act during much of the period of TAP'S promotion.

## CONCLUSIONS OF LAW

### I.   The Applicable Legal Standards

### A.   Preliminary Injunction

A preliminary injunction is "an extraordinary and drastic remedy" which should not be granted "absent a clear showing that the movant has met its burden of proof." *Karmikel Corp. v. May Dep't Stores Co.,* 658 F.Supp. 1361, 1367 (S.D.N.Y.1987); *see also Parenting Unltd. v. Columbia Pictures Television,* 743 F.Supp. 221, 224 (S.D.N.Y.1990).

A preliminary injunction may not be issued unless the moving party establishes:

> [B]oth (1) irreparable harm in the absence of the requested relief, and (2) either (a) a likelihood that it will succeed on the merits of the action, or (b) a sufficiently serious question going to the merits combined with a balance of hardships tipping decidedly in favor of the moving party.

*Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1038 (2d Cir. 1992) (vacating preliminary injunction); *see also Harm Reduction Coalition v. Bratton,* No. 95 Civ. 3171, 1995 WL 271766, at *1 (S.D.N.Y. May 9, 1995) (preliminary injunction denied).

■ In cases of copyright infringement, irreparable injury is generally presumed if the plaintiff can demonstrate a likelihood of success on the merits. *See, e.g., Richard Feiner & Co. v. Turner Entertainment Co.,* 98° F.3d 33, 34 (2d Cir.1996).

### B. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.,* 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell,* 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)).

Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues— where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment."

*Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### II. *Copyright Infringement*

There are two elements to a copyright infringement claim: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *accord Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.1997).

A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright. *See* 17 U.S.C. § 410(c). Tisi has secured such registration for SYS and Defendants do not dispute the validity of Tisi's copyright in SYS. Thus, Tisi meets the first element of an infringement claim.

■ "To prove infringement, a plaintiff with a valid copyright must demonstrate that: '(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" *Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir.1995) (*quoting Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 122–23 (2d Cir.1994)).

Since direct evidence of copying is seldom available, "[c]opying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works." *Walker v. Time Life*

*Films, Inc.,* 784 F.2d 44, 48 (2d Cir. 1986). In the alternative, "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access." *Ferguson v. NBC, Inc.,* 584 F.2d 111, 113 (5th Cir. 1978); *Gaste v. Kaiserman,* 863 F.2d 1061, 1067–68 (2d Cir.1988).

*Lipton v. Nature Co.,* 71 F.3d 464, 471 (2d Cir.1995).

### A. Access Has Not Been Demonstrated

Although Arthur Tisi submitted unsolicited demo tapes containing SYS to EMI Records and Warner Brothers, there is no evidence that SYS was ever conveyed from EMI Records or Warner Brothers Records to Patrick or to anyone with creative input into TAP.

■ Access means that the alleged infringer "had an opportunity to view or copy plaintiff's work." *Sid & Marty Krofft Television Prod. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir.1977) (*citing Arrow Novelty Co. v. Enco Nat'l Corp.,* 393 F.Supp. 157, 160 (S.D.N.Y.), *aff'd* 515 F.2d 504 (2d Cir.1975)). The plaintiff has the burden of presenting "significant, affirmative and probative" evidence to support a claim of access. *See, e.g., Palmieri v. Estefan,* 35 U.S.P.Q.2d 1382 (S.D.N.Y.1995), *aff'd on other grounds,* 88 F.3d 136 (2d Cir.1996); *Intersong–USA v. CBS, Inc.,* 757 F.Supp. 274, 281 (S.D.N.Y.1991). Conjecture or speculation is insufficient. *See, e.g., Cox v. Abrams,* No. 93 Civ. 6899, 1997 WL 251532, at *3 (S.D.N.Y. May 14, 1997) ("To survive summary judgment Plaintiffs

must show a reasonable possibility of access, not a bare possibility."); *Intersong– USA,* 757 F.Supp. at 281.

■ This principle has been confirmed recently in *Dimmie v. Carey,* 88 F.Supp.2d 142 (S.D.N.Y.2000). *Dimmie* rejected a claim nearly identical to that asserted here, holding that plaintiff's submission of her song to Columbia Records failed to establish that there was a "reasonable possibility" that the composers had access to the song and granting defendants' motion for summary judgment. *See id.* at 145–48.

The same result was previously reached by this Court in *Novak v. National Broad. Co.,* 752 F.Supp. 164 (S.D.N.Y.1990), in which the plaintiffs had alleged that the creators of "Saturday Night Live" had copied a comedy sketch that the plaintiffs had written. The plaintiffs had submitted a tape containing their sketch to NBC Entertainment's president, Brandon Tartikoff, and Saturday Night Live's allegedly infringing skit aired approximately three weeks later. The tape was subsequently returned to plaintiffs, along with a note typed on Tartikoff's letterhead stating, "We found this in our office and thought you might like it back." *Id.* at 167. Tartikoff testified that he never viewed plaintiffs' tape. The Court noted that plaintiffs had not introduced any evidence contradicting Tartikoff's testimony. The Court held that plaintiffs had failed to raise a genuine issue of fact regarding access and granted summary judgment dismissing plaintiffs' claim.

*Cox v. Abrams,* 1997 WL 251532, is in accord as are a number of other cases.[2]

**2.** *See, e.g., Siskind v. Newton–John,* No. 84 Civ. 2634, 1987 WL 11701, at *5 (S.D.N.Y. May 22, 1987) (granting defendants' motion for summary judgment and stating that, "[t]he most that plaintiff can be said to have shown is that the [plaintiff's] tape was in the possession of [the recording company's] personnel. . . . It must be concluded that plaintiff has made no showing of access which is even sufficient to raise a triable issue of fact."); *Eaton v. National Broad. Co.,* 972 F.Supp. 1019, 1024 n. 7 (E.D.Va.1997) (proof of access to plaintiff's work by the corporation which broadcast the allegedly infringing work is insufficient because "it is access by the creators of the allegedly infringing work that must be shown"), *aff'd mem.,* 145 F.3d 1324 (4th Cir.1998); *Meta–Film Assocs. v. MCA, Inc.,* 586 F.Supp. 1346, 1355 (C.D.Ca.1984) (access may be inferred only where it is reasonable to assume that the person to whom the plaintiff sent her work viewed it and then transmitted it to the creator of the allegedly infringing work, *i.e.,* where the alleged inter-

While Tisi has cited *Gaste v. Kaiserman,* 863 F.2d 1061 (2d Cir.1988), to support the claim of access, *Gaste* did not address the "bare corporate receipt" doctrine, and in *Gaste* the court found that defendant Kaiserman offered demonstrably false evidence in an effort to dispute access.

There is no question that Tisi has failed to meet the standard on a motion for a preliminary injunction for demonstrating access, to say nothing of his failure to meet the standard for summary judgment. On the contrary, even construing the facts in the light most favorable to Tisi, he has failed to establish as a matter of law that Patrick or anyone else involved with the creation of TAP had access to SYS.

### B. *Tisi Has Made No Showing of Striking Similarity*

As Tisi has failed to prove access as a matter of law—even construing the facts in the light most favorable to Tisi—in order to prevail on his motions either for a preliminary injunction or for summary judgment, Tisi must now show that TAP is strikingly similar to SYS. Indeed, in order to defeat Defendants' cross-motion for summary judgment Tisi must set forth disputed facts material to a finding of striking similarity. This he has not done.

■ Under the stringent test of "striking similarity," a plaintiff can avoid dismissal only by proving that the works "are so 'strikingly similar' as to preclude the possibility of independent creation." *Cox,* 1997 WL 251532 at *3 (*quoting Gaste,* 863 F.2d at 1067–68); *see also Ferguson v. National Broad. Co.,* 584 F.2d 111, 113 (5th Cir.1978) (same). "[S]triking similarity exists when two works are so nearly alike that the only reasonable explanation for such a great degree of similarity is that the later ... was copied from the first."

*Cox,* 1997 WL 251532 at *5 (citations omitted).

■ The striking similarity test, moreover, is applied with particular stringency in cases, such as here, involving popular music. *McRae v. Smith,* 968 F.Supp. 559, 566 (D.Colo.1997) (*citing Gaste,* 863 F.2d at 1068). Indeed, the Second Circuit has instructed that a court must be "mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music." *Gaste,* 863 F.2d at 1068; *see also McRae,* 968 F.Supp. at 566–67 (rejecting plaintiff's experts' claim of striking similarity because most of the elements the experts relied on—such as the songs' rhythm, chord progression, and melodic line—were common musical elements which were not copyrightable); *Jarvis v. A & M Records,* 827 F.Supp. 282, 291 (D.N.J. 1993) ("Easily arrived at phrases and chord progressions are usually non copyrightable"); *Intersong–USA,* 757 F.Supp. at 282 (songs' structure, patterns, harmonic progression and recurring eighth note rhythm were common musical elements which were not copyrightable).

■ Even construing the facts in the light most favorable to Tisi, the two songs are not strikingly similar as a matter of law. Significantly, Tisi cannot contend that either the lyrics or the melody of TAP are strikingly similar to SYS. His striking similarity theory is based solely on basic, non-protectible musical elements found in his song: the key of A major, tempo (although Tisi's expert concedes that TAP actually has a slower tempo), a chord structure/harmonic progression common to much rock music (although the structure is not identical, which Tisi's expert admits), the guitar rhythm (but not the overall

---

mediary "either was a supervisor with responsibility for the defendant's project, was part of the same work unit as the copier, or contributed creative ideas or material to the defendant's work"); *Vantage Point, Inc. v. Parker Bros.,* 529 F.Supp. 1204, 1213 (E.D.N.Y.1981), *aff'd,* 697 F.2d 301 (2d Cir. 1982) (proof that plaintiff sent a copy of his game idea to Parker Brothers' president and that such idea was received did not constitute a prima facie showing of access).

rhythm and percussion, nor the additional guitar rhythms in TAP), and the fact that the chords of both songs are in "root" position. These elements are not copyrightable as a matter of law and summary judgment for defendants is appropriate. *See, e.g., McRae,* 968 F.Supp. at 566–67; *Jarvis,* 827 F.Supp. at 291; *Intersong– USA,* 757 F.Supp. at 282.

As found above, there is nothing unusual about the key of A Major, a "I–IV" chord progression, the rhythm of SYS, an acoustic guitar introduction, or the so-called "adult contemporary" style of his song, as are demonstrated in numerous songs written and recorded by other well-known recording artists. The elements Tisi alleges were copied are not copyrightable.[3]

Further, numerous elements of the two songs, including the structure, chords and rhythm, are clearly distinguishable from one another. "Although plaintiff's expert opines that the songs are strikingly similar, an issue of fact cannot be created by merely reciting the magic words 'strikingly similar' and 'no possibility of independent creation.'" *McRae,* 968 F.Supp. at 566.

Finally, as found above, Patrick has established by unrebutted evidence that TAP was created independently. Even a *prima facie* case of copying may be rebutted by proof of independent creation. *See, e.g., Procter & Gamble Co. v. Colgate–Palmolive Co.,* 199 F.3d 74, 77 (2d Cir.1999); *Repp v. Webber,* 132 F.3d 882, 889 (2d Cir.1997) ("[i]ndependent creation is an affirmative defense, evidence of which may be introduced to rebut a prima facie case of infringement"); *Dimmie,* 88 F.Supp.2d at 150–51; *Cox,* 1997 WL 251532, at *7 ("Even if plaintiffs were able to infer copying, defendants could rebut this inference with evidence that the challenged work was independently created.").

In sum, the two songs share nothing in common aside from the use of basic pop and rock musical devices, which are common to many, many songs. The numerous differences between the chord progressions, tempo, rhythm, structure, lyrics and melodies of the two songs precludes as a matter of law a finding of striking similarity.

### Conclusion

For the reasons set forth above, Tisi' motions for a preliminary injunction and for summary judgment are denied. Defendants' motion for summary judgment is granted.

Submit judgment on notice.

It is so ordered.

---

**3.** Similarly, any claim that TAP copied the arrangement of SYS also must fail. It has been stated that a musical arrangement only qualifies for copyright protection if it has "a distinctive characteristic, aside from the composition itself, of such character that any person hearing it played would become aware of the distinctiveness of the arrangement." *Supreme Records v. Decca Records, Inc.,* 90 F.Supp. 904, 908 (S.D.Ca.1950). *See also McIntyre v. Double–A–Music Corp.,* 166 F.Supp. 681, 683 (S.D.Ca.1958) (arrangement consisting of common melodic and harmonic embellishments not sufficiently original to qualify for copyright protection). Here, there is nothing distinctive about the arrangement (*e.g.,* instrumentation, style and orchestration) of SYS.