FILED

FEB 13 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PIETER A. FOLKENS, DBA A Higher Porpoise Design Group, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> WYLAND WORLDWIDE, LLC, a California Corporation; WYLAND GALLERIES, INC., a California Corporation; SIGNATURE GALLERY GROUP, INC., DBA Wyland Galleries, a Nevada Corporation; (NFN) WYLAND, AKA Robert Thomas Wyland <br><br> Defendants-Appellees. | No.  16-15882 <br><br> D.C. No. 2:14-cv-02197-JAM-CKD Eastern District of California, Sacramento <br><br> ORDER |

Before:  GOULD and MURGUIA, Circuit Judges, and GRITZNER,[*] District Judge.

The opinion disposition filed February 2, 2018, is withdrawn and a new opinion disposition is filed concurrently with this order.  The time for filing a petition for rehearing or petition for rehearing en banc is calculated from the date of the filing of this new opinion.

---

[*]    The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 13 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PIETER A. FOLKENS, DBA A Higher Porpoise Design Group,

Plaintiff-Appellant,

v.

WYLAND WORLDWIDE, LLC, a California Corporation; WYLAND GALLERIES, INC., a California Corporation; SIGNATURE GALLERY GROUP, INC., DBA Wyland Galleries, a Nevada Corporation; (NFN) WYLAND, AKA Robert Thomas Wyland

Defendants-Appellees.

No. 16-15882

D.C. No.
2:14-cv-02197-JAM-CKD

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted November 14, 2017
San Francisco, California

Before: Ronald M. Gould and Mary H. Murguia, Circuit Judges, and James E. Gritzner,[*] District Judge.

Opinion by Judge Gould

---

[*] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

GOULD, Circuit Judge:

Plaintiff Peter A. Folkens ("Folkens") alleges that Defendant Robert T. Wyland ("Wyland") infringed on his pen and ink depiction of two dolphins crossing underwater. Folkens contends that Wyland's depiction of an underwater scene infringes on his drawing by copying the crossing dolphins, and that the similar element of two dolphins crossing underwater is protectable under copyright law, entitling him to proceed to trial on the issue of whether Wyland's painting violates his copyright. We consider whether two dolphins crossing underwater is a protectable element under the objective standard of this Court's extrinsic test for substantial similarity. We hold that the depiction of two dolphins crossing underwater in this case is an idea that is found first in nature and is not a protectable element. We note, as we did in *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), that a collection of unprotectable elements—pose, attitude, gesture, muscle structure, facial expression, coat, and texture—may earn "thin copyright" protection that extends to situations where many parts of the work are present in another work. But when, as here, the only areas of commonality are elements first found in nature, expressing ideas that nature has already expressed for all, a court need not permit the case to go to a trier of fact. We affirm the district court.

# I

## A

2

Folkens states he is a "world-renowned wildlife artist, illustrator, photographer, researcher, and author best known for his work in the field of marine mammals." He is the author and copyright owner of a pen and ink illustration titled "Two Tursiops Truncatus" also known as "Two Dolphins," which he created in 1979. Two Dolphins is a black and white depiction of two dolphins crossing each other, one swimming vertically and the other swimming horizontally. No other subjects appear in the pen and ink illustration. The illustration has at least one copyright registration, VA 31-890.



© 1979 by Pieter Folkens for Lifeline Marine Research and the Marine Mammal Fund, San Francisco, Califor

**Folkens's Two Dolphins**

4

Folkens alleges that in 2011 Wyland created an unauthorized copy of Two Dolphins in a painting titled "Life in the Living Sea."[1]  Wyland's Life in the Living Sea painting is a color depiction of an underwater scene consisting of three dolphins, two of which are crossing, various fish, and aquatic plants.

---

[1] Folkens also filed a claim for infringement based on Defendants' sculpture known as the Wyland Dolphin, but the grant of summary judgment in favor of Defendants on that claim is not at issue on this appeal.



**Wyland's Life in the Living Sea[2]**

---

[2] Appellant and Appellees submitted black and white copies of Wyland's Life in the Living Sea to this court in their excerpts of records. Both parties agree, however, that Life in the Living Sea is a color painting. We retrieved the color depiction of the painting reproduced above from the district court's docket as the exhibit submitted to the district court on summary judgment was in color. *See Folkens v. Wyland Worldwide, et al.*, 2:14-cv-02197-JAM-CKD, Docket 33-13, Ex. J at 2.

Folkens alleges that in total Defendants[3] created enough prints to make $4,195,250 from sales of Life in the Living Sea. Folkens further alleges that Defendants have created other unauthorized copies of Two Dolphins for use in advertising on the internet. Folkens alleges that Defendants currently display the infringing works at galleries around the country. Folkens states that he found out about the infringement in October 2013, and that he informed Defendants about their infringing works on or about September 18, 2014. This lawsuit followed.

**B**

The district court granted summary judgment for Defendants after applying the Ninth Circuit's extrinsic test of substantial similarity to assess whether the Defendants' work infringed Folkens's copyright. Copyright protection only extends to original works and the district court had to first dissect the works, Two Dolphins and Life in the Living Sea, to determine what elements were original and protectable, and what elements were unprotectable. Then, under the extrinsic test, the district court properly only compared the works' protectable elements to determine if the works were substantially similar as measured by external, objective criteria.

---

[3] Wyland, Wyland Worldwide, LLC, Wyland Galleries, Inc, and Signature Gallery Group, Inc., d/b/a Wyland Galleries are collectively referred to as Defendants.

The district court found that "the main similarity between Wyland's 'Life in the Living Sea' and Folkens's 'Two Dolphins' is two dolphins swimming underwater, with one swimming upright and the other crossing horizontally." The district court concluded that "this idea of a dolphin swimming underwater is not a protectable element" because natural positioning and physiology are not protectable under Ninth Circuit precedent, citing *Satava*. The district court commented that "the cross-dolphin pose featured in both works results from dolphin physiology and behavior since dolphins are social animals, they live and travel in groups, and for these reasons, [dolphins] are commonly depicted swimming close together." The district court further found that Folkens had not identified any elements of his work that are not commonplace or dictated by the idea of two swimming dolphins. The district court concluded that no reasonable juror could find substantial similarity between the two works because the element of similarity between Two Dolphins and Life in the Living Sea was not a protectable element.

## II

We review a district court's decision to grant summary judgment *de novo*. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012). Summary judgment is appropriate if "there is no genuine dispute of material fact" viewing

8

the evidence in the light most favorable to the nonmoving party. *Id.* (citing Fed. R. Civ. P. 56(a)). A genuine dispute of a material fact is "one that could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## III

Folkens concedes that the *idea* of dolphins swimming underwater is not protected, but argues that his *unique expression* of that idea is protected. Folkens contends that the dolphins here do not exhibit behavior shown in nature because the dolphins in the photos that Two Dolphins was based upon were posed by professional animal trainers in an enclosed environment. Folkens contends that Defendants offered no evidence that the crossing of two dolphins in this way occurs in nature, and that fact alone should have precluded summary judgment.[4]

Defendants argue that the district court correctly concluded that scenes found in nature, such as dolphins crossing in the wild, are not protected by copyright laws and that there were no protectable elements that were similar based on the shared subject matter. Defendants further argue that Folkens's reliance on

---

[4] Both parties offer other arguments that are not relevant to the main issue and this Court's decision in this case. Folkens contends that Life in the Living Sea is a mere enlargement of Two Dolphins, and Defendants contend that Wyland drew dolphins crossing prior to when Folkens created Two Dolphins.

the fact that the dolphins were posed is a red herring because animal trainers can pose animals to capture positions that naturally occur in the wild.

To prove copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The parties do not dispute that Folkens owns a valid copyright, but instead focus on element two—whether Wyland copied constituent elements of the work that are original.

Because direct evidence of copying is often not available, a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar. *L.A. Printex Indus., Inc.*, 676 F.3d at 846. Defendants do not contest access to the works, but argue, among other things, that "as a matter of law, there is no substantial similarity" between Two Dolphins and Life in the Living Sea. We must determine whether the two works are substantially similar.

Summary judgment is "not highly favored" on questions of substantial similarity, but it is appropriate if we can conclude that "no reasonable juror could find substantial similarity of ideas and expression." *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990). To determine whether works are substantially similar, we apply a two-part test: an extrinsic test and an intrinsic test. *L.A. Printex, Indus.*

10

*Inc.*, 676 F.3d at 848. On summary judgment, we consider only the extrinsic test—an objective comparison of specific expressive elements focusing on articulable similarities between the two works. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). Analytic dissection of a work and expert testimony are appropriate for the extrinsic test. *Id.* "Where a high degree of access is shown, we require a lower standard of proof of substantial similarity." *Swirsky v. Carey,* 376 F.3d 841, 844 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004). However, "[b]ecause the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Id.* at 845. "The key question always is: Are the works substantially similar beyond the fact that they depict the same idea?" *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 917 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010).

The parties agree that the element of similarity is the two dolphins crossing. The key inquiry is whether the crossing dolphins are a protectable element. *Swirsky*, 376 F.3d at 845. Folkens contends that his expression of two dolphins crossing is a protectable element, while Defendants argue, and the district court concluded, that it was a naturally occurring element and therefore not protectable under copyright law.

11

First, we observe that the fact that a pose can be achieved with the assistance of animal trainers does not in itself dictate whether the pose can be found in nature. For example, an animal trainer may be used to get a dog to sit still while a photograph is taken or a painting is done, but no one would argue that the position of a dog sitting was not an idea first expressed in nature. In that case, the trainer's purpose was not to create a novel pose, but to induce the dog to hold that pose for a period of time. Similarly, here, the dolphin trainer got one dolphin to swim upwards while its photo was taken, and got another to swim horizontally while its picture was taken. Neither of these swimming postures was novel. The positioning of the dolphins by a trainer does not entitle Folkens to survive summary judgment.

Further, we have held that ideas, "first expressed in nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava*, 323 F.3d at 813. We reaffirm that basic principle. An artist may obtain a copyright by varying the background, lighting, perspective, animal pose, animal attitude, and animal coat and texture, but that will earn the artist only a narrow degree of copyright protection. *Id.* There is no question that the other aspects of Two Dolphins and Life in the Living Sea, beyond the two dolphins crossing, are different—Life in the Living Sea is in color, includes a third

12

dolphin, has different lighting, and includes several species of fish and marine plants.

In *Satava*, we considered a case where a plaintiff attempted to assert a copyright infringement claim for glass-in-glass sculptures of jellyfish rising in the ocean. *Id.* at 807. The sculpture was described as a "vertically oriented, colorful, fanciful jellyfish with tendril-like tentacles and a rounded bell encased in an outer layer of rounded clear glass that is bulbous at the top and tapering toward the bottom to form a roughly bullet shape;" the jellyfish appeared "lifelike." *Id.* We were asked to determine whether the district court erred in enjoining the defendant from making sculptures similar to the plaintiff's jellyfish. *Id.* at 809–10. We reasoned that the plaintiff could not prevent others from depicting jellyfish within a clear outer layer of glass because that was an appropriate setting for an aquatic animal and he could not prevent others from depicting jellyfish with tendril-like tentacles or rounded bells because many jellyfish possess those parts. *Id.* at 811. More generally, we held that no artist may use copyright law to prevent others from depicting ideas first expressed by nature, but cautioned that this did not mean that no realistic depiction of live animals can be protected by copyright. *Id.* at 812–13. We indicated that an artist can protect the "original expression he or she contributes to these ideas" and "may earn copyright protection," but that "the scope of [his or her] copyright is narrow." *Id.* at 813.

We make a similar distinction today. We conclude that a depiction of two dolphins crossing under sea, one in a vertical posture and the other in a horizontal posture, is an idea first expressed in nature and as such is within the common heritage of humankind. *See id.* No artist may use copyright law to prevent others from depicting this ecological idea. *See id.*; *see also George S. Chen Corp. v. Cadona Intern., Inc.*, 266 F. App'x 523, 524 (9th Cir. 2008) (holding that an ornament of a dolphin with "an open mouth and an uplifted, twisted tail" follows from the idea of a swimming dolphin and is not protectable). Folkens's Two Dolphins arises from the fact that dolphins are social animals, often depicted swimming in groups—as they are found in nature. Two Dolphins also represents dolphins swimming vertically and horizontally, ideas requiring no stretch of the average person's imagination because dolphins do this in nature. Nature provides us with numerous iconic depictions of animals: ants marching in a straight line; geese flying in a "V" as they migrate; a mother duck being followed by her ducklings out of a pond; a hummingbird hovering as it sucks nectar from a flower; and bats hanging upside down from a cave ceiling, to name a few illustrative examples. As a general rule, under our copyright law, an artist may not use copyright law to prevent others from depicting such ideas first expressed by nature. *See Satava*, 323 F.3d at 813. The basic idea of copyright law is to protect unique expression, and thereby to encourage expression; it is not to give to the first artist

14

showing what has been depicted by nature a monopoly power to bar others from depicting such a natural scene.

Folkens holds a thin copyright in his expression of the two dolphins in dark water, with ripples of light on one dolphin, in black and white, but that copyright is narrow. *See id.* The protectable elements that form Folkens's thin copyright in Two Dolphins are not substantially similar to Wyland's crossing dolphins in Life in the Living Sea. Wyland's dolphins are in color, do not show light ripples off the body of a dolphin, and the dolphins cross at different angles. Based on our careful consideration of the total circumstances presented, we conclude that Folkens's thin copyright is not infringed by Wyland's picture.

While Folkens tries to make the argument that Wyland copied his expression of two dolphins swimming, it is clear from precedent that protectable expression must be more specific than just the natural element of crossing dolphins; here, it necessarily includes their exact positioning, the stippled light, the black and white depiction, and other specific and unique elements of expression. *See id.* (recognizing that an artist "may, however, protect the original expression he or she contributes to these ideas" including "the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of [the] animal . . . and the background, lighting, or perspective"); *cf. Mattel, Inc.*, 616 F.3d at 915–16 (concluding that that the concept of depicting a young, fashionable female with exaggerated features is

15

unoriginal and an unprotectable idea while particular expressions including hair, eye, and skin color, outfit, and shoes may be protectable).

We hold that under the circumstance of this case, the district court did not err by granting summary judgment for Defendants because the similar element of Two Dolphins and Life in the Living Sea, two dolphins crossing one another, one vertical and the other horizontal, is not protectable and the other particularities of the scene depicted are not the same.

## IV

When determining whether a copyright infringement claim will survive summary judgment, the court must analyze whether there is substantial similarity between the works under the extrinsic test. The extrinsic test considers only the protectable elements of a work. In *Satava*, we made clear that those protectable elements could not be ideas expressed in nature subject to a thin copyright that may extend only to the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of the animal. Because the depictions of two dolphins crossing here share no similarities other than in their non-protectable elements of the dolphins crossing, we affirm the judgment of the district court.

**AFFIRMED.**

16

## Counsel listing

Geoffrey Wm. Steele (argued), Karl Folkens, Scott D. Reep, and Stephen Gizzi, Gizzi Reep Foley, Benicia, California, for Plaintiff-Appellant.

Marc Dale Risman (argued), Henderson, Nevada, for Defendants-Appellees.