RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ENCHANT CHRISTMAS LIGHT MAZE & MARKET LTD.,
                                    *Plaintiff-Appellant*,

          *v.*                                                    No. 19-6282

GLOWCO, LLC; EXHIBAU US, LLC; PATRICK
WALLAIN; CHRIS STACEY,

                                    *Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00966—Aleta Arthur Trauger, District Judge.

Decided and Filed:  May 14, 2020

Before:  GILMAN, DONALD, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Stephen J. Zralek, Maria Q. Campbell, Shea T. Hasenauer, BONE MCALLESTER
NORTON PLLC, Nashville, Tennessee, for Appellant.  John R. Jacobson, Alex Fardon, RILEY
WARNOCK & JACOBSON, PLC, Nashville, Tennessee, Michael A. Johnson, KAY GRIFFIN,
PLLC, Nashville, Tennessee, for Appellees.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge.  Enchant Christmas Light Maze & Market Ltd. ("Enchant")
sought a preliminary injunction against Glowco, LLC and its operator Chris Stacey, and against
Exhibau US, LLC and its operator Patrick Wallain (collectively "Glowco").  Enchant sought to
enjoin Glowco from further infringing Enchant's copyrights in a number of holiday light

sculptures.  The district court denied Enchant's request.  Enchant appealed and, for the reasons set forth below, we AFFIRM.

I.

Enchant, a Canadian company, produces a holiday-themed light show, which it exhibits across the United States and Canada.  The show, "Enchant Christmas," features large three-dimensional sculptures fitted with lights including, but not limited to, sculptures of polar bears, deer, and ice crystals.  Enchant obtained copyright registrations for several of its sculptures, including those at issue here.

Patrick Wallain, operator of Exhibau, worked with Enchant from 2016 to 2017 to produce Enchant Christmas.  Wallain had access to a shared folder with Enchant's files, which included design files used to construct Enchant's light sculptures.  Wallain retained access to Enchant's files even after his work with the company ceased.

Between 2017 and 2018, Wallain and Chris Stacey, operator of Glowco, discussed the possibility of producing a Christmas light show in Nashville, Tennessee, in affiliation with Enchant.  The parties could not strike an agreement, however, so Wallain and Stacey decided to pursue a Nashville light show on their own.  In preparation for their show, the two purchased some light sculptures from Enchant and solicited manufacturers in China, where Enchant's sculptures were made, to produce additional light sculptures.  Wallain (or someone from his company) sent two-dimensional images of Enchant's sculptures, obtained from Enchant's shared folder, to solicit bids from various manufacturers.

Enchant learned that Wallain and Stacey had decided to move forward with the Nashville light show and were planning to use sculptures allegedly created from Enchant's original drawings.  Enchant then filed suit against Glowco, alleging three counts of copyright infringement, two counts of misappropriation of trade secrets, and one count of violating the Tennessee Personal and Commercial Computer Act.  Enchant also filed a motion for a temporary restraining order, a preliminary injunction, and an emergency hearing, claiming that it would suffer irreparable injury without immediate action.  The district court granted a temporary restraining order and scheduled a hearing on Enchant's motion for a preliminary injunction.

After a hearing, the court lifted the temporary restraining order and denied Enchant's request for an injunction. The court determined that Enchant had not shown that it was likely to succeed on its copyright-infringement claims because, after comparing the designs of the sculptures in dispute, the court found that any copyright-protected interest in Enchant's nine sculptures was "very thin" and that numerous differences between the sculptures would be clear to an ordinary observer.

Enchant appealed, challenging the court's copyright determination related to seven of the disputed sculptures.

## II.

Granting a "preliminary injunction is an extraordinary remedy reserved only for cases where it is necessary to preserve the status quo until trial." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). We review the district court's decision to deny injunctive relief under an abuse-of-discretion standard. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). We examine legal questions de novo and findings of fact for clear error. *Id.* at 541.

To be entitled to injunctive relief, Enchant must first demonstrate that it is likely to succeed on the merits of its copyright-infringement claims. *See Husted*, 697 F.3d at 428. To establish infringement, Enchant must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Although the parties dispute the first element, the district court focused entirely on the second. We, likewise, direct our attention there.

A plaintiff may demonstrate that original elements of its work were copied through direct or indirect evidence. *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004). "Direct evidence of copying is rare," *Parker v. Winwood*, 938 F.3d

833, 836 (6th Cir. 2019) (quoting *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)), and may be established through "evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants," *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006).

Here, Wallain admitted that he or someone from his company sent two-dimensional images of Enchant's sculptures, which he obtained from Enchant's shared folder, to solicit bids from various manufacturers. He testified, however, that Enchant's designs were not used to manufacture the final light sculptures for the Nashville show, and he provided examples of the designs used for several of Glowco's sculptures. The district court found his testimony, and the evidence he presented, credible and thereby determined that there was no direct evidence of copying. We cannot say that the district court erred in so finding.

Without direct evidence of copying, Enchant must rely upon indirect evidence. It "may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003) (quoting *Ellis*, 177 F.3d at 506). Access is not at issue here—Glowco accessed Enchant's designs.[1] Accordingly, we turn to similarity.

---

[1]A word on the access factor. Our circuit has suggested that the degree of access might alter the proof required for showing similarity under the second factor. Under this "inverse-ratio rule," we have said that "in some cases the relationship between the degree of proof required for similarity and access may be inversely proportional: where the similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004). Here, Enchant briefly argues that a lower standard of proof of similarity is required because Glowco had ready access to Enchant's designs. But Enchant did not meaningfully develop this argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (second alteration in original) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 184, 293–94 (1st Cir. 1995)). Although Enchant alerted the district court to the inverse-ratio rule, it offered no meaningful argument as to the rule's effect on the case. For example, Enchant never explained what standard, lower than "substantially similar," the district court should use if it agreed that Glowco had a high degree of access. Enchant's appellate briefing suffers the same faults.

More fundamental problems lie with the "inverse-ratio rule." Any discussion of the rule in *Stromback* was entirely dictum. The court did not resolve the "access" issue there; the defendant conceded access and, in any event, "because there was no substantial similarity, access was irrelevant." *Stromback*, 384 F.3d at 299 (citing *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984)). *Stromback* took its mention of the rule from *Ellis*, 177 F.3d 503, which also did not have occasion to apply the rule. In fact, it does not appear that this circuit has meaningfully relied on the rule, in the manner in which Enchant requests, in any binding precedent. *But see e.g.*, *Jones v. Blige*, 558 F.3d 485, 492–93 (6th Cir. 2009) (applying the rule in the inverse—finding no access

We use a two-step approach to determine whether disputed works are substantially similar. *Kohus*, 328 F.3d at 855. We must first identify which aspects of Enchant's works, if any, are protectible by copyright. *Id.* Then, we must determine whether the allegedly infringing works, or elements of those works, are substantially similar to Enchant's protected works, or protected elements of Enchant's work. *Id.*

*Protected Elements.* The first step "filter[s] out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity." *Id.* (citing *Feist*, 499 U.S. at 345). Enchant argues that certain aspects of each of its seven sculptures are protected; it says that the authors made numerous selections and arrangements of features on the sculptures warranting protection. For example, Enchant argues that its authors depicted each animal sculpture in a calm, approachable manner, inviting interaction with patrons of Enchant's light show. Further, Enchant's author arranged the ice crystals as a cluster with "specific proportions, angles and qualities" and designed the sculpture so that patrons could walk among the crystals and interact with them.

"[N]o author may copyright facts or ideas. The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985) (internal citation omitted). "[E]xpressions that are standard, stock, or common to a particular subject matter or medium are not protectible under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). "[I]deas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Id.* at 813. For example, "an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; [and] a jellyfish swimming through tropical waters" are not entitled to protection under copyright law. *Id.*

---

and requiring the higher standard of "strikingly similar"). In any event, the "inverse-ratio rule" appears to be on its last legs. Fearing that the rule has little use in the modern, "digitally interconnected world" in which "the concept of 'access' is increasingly diluted," the Ninth Circuit recently abrogated the rule in its circuit, "join[ing] the majority of [its] sister circuits that have considered the inverse-ratio rule and have correctly chosen to excise it from copyright analysis." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051, 1068–69 (9th Cir. 2020) (en banc). The only circuit it identified as still endorsing the inverse-ratio rule is ours. *Id.* at 1066. So questions remain whether the inverse-ratio rule applies (or should apply) in our circuit. But we do not answer them today, given Enchant's cursory presentation of the issue.

Enchant's sculptures portray a polar bear cub on its hind legs, a polar bear cub with all four paws on the ground, a polar bear mother walking, an adult deer sitting with its four legs tucked under its body, an adult deer grazing, an adult deer prancing, and a structure of ice crystals protruding from the ground. Each sculpture depicts an animal or natural phenomenon the way in which it would be found in nature.**2** *See e.g.*, *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018); *Satava*, 323 F.3d at 812–13; *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988) ("[A]ppellant cannot succeed with an infringement action simply because appellee has also produced concrete statues of deer, swans, or donkeys."). We see no reason why, for example, a polar bear walking, a deer prancing, or a deer grazing should be considered differently than "ants marching in a straight line; geese flying in a 'V' as they migrate; a mother duck being followed by her ducklings out of a pond; a hummingbird hovering as it sucks nectar from a flower; and bats hanging upside down from a cave ceiling," which are ideas first expressed by nature that warrant no protection. *Folkens*, 882 F.3d at 776. It follows that qualities of Enchant's sculptures that are inherent in the chosen subject—animal sculpture—are not subject to copyright protection. *See Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 68 (1st Cir. 2009). The district court recognized the same and thus did not err.

That is not to say that realistic reproductions of live animals may never enjoy copyright protection. *See Folkens*, 882 F.3d at 775. An artist may "protect the original expression he or she contributes to" them. *Satava*, 323 F.3d at 813. For example, a collection of unprotected elements such as the animals' "pose, attitude, gesture, muscle structure, facial expression, coat, and texture," as well as the background, lighting, and perspective may earn "'thin copyright' protection," if original. *Folkens*, 882 F.3d at 770; *see also Satava*, 323 F.3d at 812 (stating that a thin copyright "protects against only virtually identical copying"); *Feist*, 499 U.S. at 349 (recognizing that the thin copyright in a factual compilation means that, "[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's

---

**2**As the district court recognized, the "stylized antlers," portrayed on some of Enchant's deer sculptures, might be entitled to protection as they appear to be depicted in a way not ordinarily found in nature. But Enchant has not pursued a claim based on these stylized antlers. *See* R. 39, PageID 366 ("[S]tylized antlers . . . are not at issue here."); *see also* Appellant Br. at 60 n.55 ("[A]ntlers are an aspect that can be added or removed and either way, the overall copying remains the same.").

publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement"). To the extent that Enchant's sculptures contained some original work warranting protection, the district court did not err when it determined that Enchant had a thin copyright at best.

*Substantial Similarity*. The next question is whether any protectible elements forming Enchant's thin copyright are substantially similar to elements found in Glowco's sculptures. *See Kohus*, 328 F.3d at 856. Two works are substantially similar when "they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." *Coquico*, 562 F.3d at 67. Courts "consider substantial similarity from the viewpoint of the intended audience," *Kohus*, 328 F.3d at 858, which is "[n]ormally, . . . the lay public, or the ordinary reasonable person," *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 F. App'x 547, 554 (6th Cir. 2005) (citing *Kohus*, 328 F.3d at 857).

On appeal, Enchant identifies elements of each of Glowco's seven sculptures that it believes are substantially similar to its own. Enchant alleges similarities in the proportions and ages of the animals reflected in the sculptures as well as the placement of the animals' head, arms, legs, and tail; the contours of their bodies; the direction they face; and their approachable demeanor. Enchant also alleges similarities in the ice crystals' structural design; both sculptures "have long beams with visible pointed 'triangular' ends."

The district court determined that "most of the similarities identified by Enchant are inherent to the subject matter depicted, including animal features and naturally occurring animal poses." The court also found that one allegedly "non-naturally occurring feature"—the "anatomically incorrect neck" of one of the deer sculptures—was not a sufficient "instance of overlap" to demonstrate that Glowco copied. The court explained that "there are also substantial differences between Enchant's designs and [Glowco]'s designs." The "[h]eads, legs, and bodies [of the animal sculptures] are angled differently in many examples." For example, "[o]ne allegedly infringing bear sculpture is not only posed differently in the Glow[co] version but has an entirely different head shape, suggestive of a different species of bear. The crystals look fairly similar, in a sense, but that can be explained by the fact that they are just crystals—simple geometric planes joined together into ice-like forms."

Although there are some similarities between the designs, that is not enough for us to reverse the district court's decision to deny a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948 (2d ed. 1995)). Enchant faces a burden of proof "more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Our review of a district court's decision to deny a preliminary injunction is deferential. *Id.* The district court reasonably determined that any similarities between Glowco's sculptures and Enchant's were inherent in their subjects (animals and ice sculptures) and that Glowco's designs were not substantially similar to what could be deemed Enchant's original work. Enchant has not shown that the district court's substantial-similarity finding was clearly erroneous. *See Coquico*, 562 F.3d at 70. As such, the district court did not err when it determined that Enchant failed to show that it was likely to succeed on the merits of its copyright-infringement claims.

"[A] finding that there is simply no likelihood of success on the merits is usually fatal" to a plaintiff's quest for a preliminary injunction. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). That is particularly true here because the failure to establish a likelihood of success deprives Enchant of the rebuttable presumption of irreparable harm that this circuit has recognized in copyright-infringement actions.[3] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532–33 (6th Cir. 2004); *see also Sony/ATV Publ'g, LLC v. Marcos*, 651 F. App'x 482, 487 (6th Cir. 2016). Yet, such a showing "is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to

---

[3]Another word, this time on the rebuttable presumption of irreparable harm in copyright-infringement cases. When this circuit first recognized the presumption, we relied on Ninth Circuit caselaw. *See Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir. 1988) (citing *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 525–26 (9th Cir. 1984)). But the Ninth Circuit has since done away with the presumption, finding it inconsistent with modern Supreme Court caselaw regarding injunctions. *See Flexible Lifeline Sys, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 990 (9th Cir. 2011) (citing *Winter*, 555 U.S. 7, and *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)). Other circuits and leading treatises agree. *Id.* at 998–1000 (citing authorities); *see also T.D. Bank N.A. v. Hill*, 928 F.3d 259, 279 (3d Cir. 2019); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012). So, like the inverse-ratio rule, the rebuttable presumption appears to be on its last legs. Given that Enchant is not entitled to the presumption under our caselaw, however, we do not decide whether the presumption should remain the law of our circuit.

grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cty. Sch*., 942 F.3d 324, 327 (6th Cir. 2019).  When Enchant sought an injunction in the district court in late October 2019, it could plausibly claim the threat of imminent harm—Glowco planned to use the allegedly infringing sculptures in a show that was set to open in November and to run through the end of the calendar year.  But that show is over.  And the harm from that show was the only concrete prospective harm Enchant identified in its motion for a preliminary injunction.  In its briefs on appeal, Enchant alerts us to the possibility of a 2020 show, but we do not know whether that show will happen or whether Glowco will use the same sculptures.  Any alleged harm stemming from a possible 2020 show (which was never the subject of Enchant's motion for a preliminary injunction before the district court) is speculative and, therefore, insufficient to warrant a preliminary injunction.  *See D.T.*, 942 F.3d at 327.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's order.