RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0098p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

SUNLESS, INC.,

*Plaintiff-Appellant*,

*v.*

No. 21-3616

PALM BEACH TAN, INC.; AMERICAN TANNING, CO.;
ASHLEY LYNN'S, INC.; NORTH CENTRAL TAN, LLC;
PACIFIC BEACH TAN, INC.; OLD TRINITY PARTNERS,
LLC,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:21-cv-00248—Solomon Oliver, Jr., District Judge.

Argued: January 12, 2022

Decided and Filed: May 6, 2022

Before: GILMAN, KETHLEDGE, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Eric A. Prager, VENABLE LLP, New York, New York, for Appellant. Lisa H.
Meyerhoff, SEYFARTH SHAW LLP, Houston, Texas, for Appellees. **ON BRIEF:** Eric A.
Prager, VENABLE LLP, New York, New York, Martin L. Saad, VENABLE LLP, Washington,
D.C., Matthew D. Harper, Stephen E. Chappelear, EASTMAN & SMITH, LTD., Toledo, Ohio,
for Appellant. Lisa H. Meyerhoff, Myall S. Hawkins, SEYFARTH SHAW LLP, Houston,
Texas, Vince Smolczynski, SEYFARTH SHAW LLP, Charlotte, North Carolina, John F. Marsh,
Elizabeth E. Cary, BAILEY CAVALIERI LLC, Columbus, Ohio, Robert J. Carty, Jr.,
NICHOLS BRAR WEITZNER & THOMAS LLP, Houston, Texas, for Appellees.

---

**OPINION**

---

LARSEN, Circuit Judge.  Sunless, Inc. sells tanning booths and accompanying spray tan solution under the "Mystic Tan" mark.  Sunless claims that applying Mystic Tan solution in a Mystic Tan booth results in a "Mystic Tan Experience."  Palm Beach, Inc. owns and franchises a chain of tanning salons.  It owns a number of Mystic Tan-branded booths, and it used to buy Mystic Tan-branded tanning solution to use in them.  Indeed, it had no choice, because the Mystic Tan booths were designed to accept only Mystic Tan solution.  But now Palm Beach has jury-rigged the booths so that they will operate with its own distinctly branded spray tan solution, unapproved by Sunless.  Sunless sought a preliminary injunction under the Lanham Act, arguing that the jury-rigging is likely to confuse consumers into believing they are getting a genuine "Mystic Tan Experience" when they are not.  The district court denied the motion on the ground that Sunless had failed to show, at this stage of the litigation, that consumers in Palm Beach's salons would be confused.  We affirm.

I.

Sunless manufactures and sells tanning booths and spray tan solution under the "Mystic Tan" trademark.  Sunless claims that its booths and solutions are inextricable: The booths work only with authorized solutions, verified by a barcode; both the booth and the solution prominently display the "Mystic Tan" mark; and the booths were programed so that audio and visual cues would invite customers to enjoy their "Mystic Tan."  Sunless claims that the booth and solution together create the "Mystic Tan Experience," and that it has "expended considerable resources in advertising, promoting, and selling MYSTIC TAN® brand products and services," though it points to no marketing of a "Mystic Tan Experience" in particular.

Palm Beach, a chain of indoor tanning salons, is Sunless's biggest customer.  It purchases Mystic Tan booths, and it used to purchase Mystic Tan solution.  However, due to alleged quality-control and shipping problems, Palm Beach stopped buying the solution and started producing its own, the "Premier Sunless Solution," which bears its own distinct mark.  At first, Palm Beach worked with Sunless, asking it to disable the barcode system that prevented Palm

Beach from using its Premier Solution in the Mystic Tan booths, but Sunless refused.  So Palm Beach created a workaround: taping a recycled Sunless barcode inside the machine to bamboozle the booths into accepting the Premier solution in lieu of Sunless's.  Palm Beach instructed its franchisees to do the same.

Sunless filed suit, alleging that this workaround violates the Lanham Act, 15 U.S.C. §§ 1114, 1125.  It then moved for a preliminary injunction.  The district court denied the motion on the ground that Sunless had not established a strong likelihood of prevailing on the merits of its trademark claims or demonstrated irreparable harm.  Sunless now appeals.

## II.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The likelihood of success on the merits is a question of law that we review de novo.  *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019).  And a failure to establish a likelihood of success on the merits "'is usually fatal' to a plaintiff's quest for a preliminary injunction."  *Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).  We review the district court's findings of fact under the clear error standard, *id.* at 536, and the ultimate determination of whether the four factors weigh in favor of granting relief under the abuse of discretion standard, *Speech First*, 939 F.3d at 763.

We start with the likelihood of success on the merits.  "The touchstone of liability under [15 U.S.C.] § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods . . . ."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).  The same standard controls claims brought under 15 U.S.C. § 1125.  *See Progressive Distrib. Servs. v. United Parcel Serv., Inc.*, 856 F.3d 416, 424 (6th Cir. 2017).  In this circuit, the usual way to prove consumer confusion is by using the *Frisch* factors, an eight-factor, totality-of-the-circumstances test.  *See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*,

670 F.2d 642, 648 (6th Cir. 1982) ((1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines). But Sunless made no attempt to analyze these factors in the district court. So the district court found that Sunless had not "established a likelihood of consumer confusion under . . . *Frisch*." *Sunless, Inc. v. Palm Beach Tan, Inc.*, No. 5:21 CV 248, 2021 WL 4777439, at \*4 (N.D. Ohio June 30, 2021). In other words, the district court concluded that Sunless had forfeited its opportunity to show consumer confusion under the *Frisch* factors. We agree.

To the extent Palm Beach suggests that the district court was "required" to analyze the *Frisch* factors despite the parties' failure to brief them, that view is mistaken. We have chided district courts for failing to explain their assessment of the *parties*' arguments under *Frisch*. *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 413 (6th Cir. 2006) (suggesting that the district court erred by finding trademark infringement under *Frisch* while giving "no indication of its analysis" or "reasoning," but noting that such silence was "not, standing alone, a reversible error"); *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 & n.4 (6th Cir. 1991) (stating that a "thorough and analytical treatment" of *Frisch* must "be attempted," though perhaps not "where there is no difference between the marks of directly competitive goods/services"). And, to be clear, that admonition still holds. But we have never suggested that when the parties themselves have failed to offer any argument under *Frisch*, the district court must make the parties brief the factors or face reversal. Other than assuring itself of its own jurisdiction, *see Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 764 (6th Cir. 2019), the district court was under no obligation to consider arguments not presented to it, *see Threat v. City of Cleveland*, 6 F.4th 672, 681 (6th Cir. 2021).

Still, Sunless did not neglect the Lanham Act's requirement that it show a likelihood of confusion. Instead of presenting its case using the *Frisch* test, it took another path, arguing that it could show consumer confusion under a Second Circuit case, *El Greco Leather Products Co.*

*v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir. 1986).[1]  This is likely why:  Most cases deploying the *Frisch* factors (or the Second Circuit's equivalent, *see Polaroid Corp. v Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)), involve a comparison of similar marks on similar products. The factors help decide whether the products and marks are "similar enough to raise an issue of likelihood of confusion."  5 Louis Altman & Malla Pollack, Callmann on Unfair Competition, Trademarks, and Monopolies § 21:11, Westlaw (database updated December 2021).   But *El Greco* didn't fit this pattern; it involved one product (shoes) bearing a genuine mark (CANDIE'S).  The mark's owner rejected a production run from its manufacturer due to a lack of quality-control.  *El Greco*, 287 F.2d at 394.  The manufacturer then turned around and sold the shoes bearing the CANDIE'S mark to a third-party retailer, who sold the shoes to the public without alteration.  *Id.*  The trademark owner sued the retailer for trademark infringement.  But, presumably because the products and the marks were identical (except, perhaps, for the quality), the retailer didn't bother arguing that customers could tell the shoes apart.  And the Second Circuit didn't deploy its version of the *Frisch* factors in assessing the likelihood of consumer confusion.  *Id.* at 395–96.

Instead, the retailer argued that the shoes it sold were "genuine," so the sale could not be trademark infringement.  *Id.* at 395; *see also Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007) (discussing the "first sale" doctrine, which allows resale of a genuine trademarked item where the seller does no more than stock, display, and resell the item).  The Second Circuit rejected this argument, concluding that the shoes were not "genuine" because the trademark owner had been deprived of "[o]ne of the most valuable and important protections afforded by the Lanham Act[:] . . . the right to control the quality of the goods manufactured and sold under the holder's trademark."  *El Greco*, 806 F.2d at 395.  Although the CANDIE'S mark was genuine, the otherwise-identical shoes were not genuine CANDIE'S products because the owner's quality-control mechanisms had been undermined.  *Id.*  Under

---

[1]Palm Beach argues that Sunless failed to properly raise *El Greco* as an alternative to *Frisch*.  That argument is puzzling.  The district court noted that "Sunless relie[d]" on *El Greco* "[i]n making th[e] argument" that Palm Beach's "circumvention of Sunless'[s] quality control measures has confused . . . consumers."  *Sunless*, 2021 WL 4777439, at *5.  And it also noted Palm Beach's proffered distinctions between the instant case, "*El Greco*[,] and the other cases Sunless cites."  *Id.*  Because Sunless explicitly pressed the *El Greco* argument, there was no forfeiture.

these circumstances, the court thought it "plain" that consumer confusion would likely result from the sale of the shoes. *Id.* at 396; *see also Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (finding plaintiff likely to succeed on the merits of its trademark claim where defendant legally purchased plaintiff's perfume but removed the UPCs from the label before resale); *Shell Oil Co. v. Com. Petroleum, Inc.*, 928 F.2d 104, 106 (4th Cir. 1991) (affirming grant of injunction prohibiting defendant from selling Shell oil because it wasn't complying with Shell's stringent quality-control standards).

Here, Sunless casts Palm Beach's workaround (tricking the Mystic Tan-branded booths into accepting non-Mystic Tan solutions) as akin to what happened in *El Greco*. On Sunless's telling, Palm Beach is using Sunless's mark to sell a non-genuine "Mystic Tan Experience" that has circumvented Sunless's quality-control measures. Whether or not we would adopt the *El Greco* test, Sunless was free to try to persuade the district court (and us) to adopt it as a way to show the "likelihood of confusion" required by the statute.

The problem for Sunless is that it didn't do enough to show that it was entitled to relief under its proposed *El Greco* test. The district court correctly recognized that "[a]t root," the parties' dispute centers on whether the "'Mystic Tan Experience' is an indivisible whole." *Sunless*, 2021 WL 4777439, at *5. The district court determined that Sunless had not laid a sufficient factual predicate to show that consumers view Mystic Tan booths and the solutions they spray as a single, integrated product (a "Mystic Tan Experience"), rather than two distinct products that can be mixed and matched. After all, Palm Beach never conceded that it sells a "Mystic Tan Experience," much less did it argue, like the defendant in *El Greco,* that its tanning experience is a *genuine* "Mystic Tan." *Cf. El Greco*, 806 F.2d at 395. To the contrary, Palm Beach's position is that there is no such thing. Palm Beach says there are two products: booths and solutions, each displaying its own distinct mark. Although Palm Beach continues to use the Mystic Tan-branded booths (which it owns outright), it neither uses nor claims to use Mystic Tan solutions. So, in Palm Beach's view, the *El Greco* test simply does not apply.

The district court did not err when it concluded that Sunless had failed, at this stage, to show that it is entitled to preliminary relief under *El Greco*. Sunless's evidence established that its booths, which bear the Mystic Tan logo, were manufactured to work only with its solution. It

also brought forward three consumer complaints confusing Palm Beach's tanning solution with a Mystic Tan product.  But the district court gave these complaints little weight, calling them "unverified." *Sunless*, 2021 WL 4777439, at *2.  Meanwhile, Palm Beach presented evidence that the mark it displayed on its tanning solution doesn't resemble Sunless's in the least, that it posted disclaimers at the front of the store and on each booth informing customers that it does not use Mystic Tan solutions in the booths, that it changed the audio and visual cues in the booths, and that, shortly before the lawsuit was filed, it ceased external marketing of "Mystic Tan."  And no customers were confused after that.

The district court reviewed this evidence and concluded that, based "on the current record and given the parties' various arguments at this point," Sunless had not produced sufficient evidence showing "that the 'Mystic Tan Experience' is an indivisible whole."  *Sunless*, 2021 WL 4777439, at *5.  And, absent such a showing, Sunless could not show a likelihood of consumer confusion under *El Greco*.  Sunless, therefore, could not establish a likelihood of success on the merits.  We cannot say that the district court erred in this assessment.

Having concluded that Sunless had not shown a likelihood of success on the merits, the district court correctly noted that Sunless was not entitled to a presumption of irreparable harm. *See* 15 U.S.C. § 1116(a).  The likelihood of success on the merits is usually dispositive.  *Enchant Christmas*, 958 F.3d at 539.  That is especially true in a case like this where the parties' arguments come down to consumer confusion; Sunless never argued that the other factors could support an injunction without a finding of consumer confusion.  Overall, we see no abuse of discretion.

\* \* \*

We AFFIRM.